Counsel, you may proceed. Thank you, Your Honor. Good morning, Your Honors. My name is Lori Teicher. I'm appearing on behalf of Petitioner Appellant Mr. Levenrel Polk. I would ask to reserve three minutes for rebuttal. There are a number of issues included in the briefing, and I'd like to discuss today two of those issues, the Batson and prosecutorial misconduct issues. First, in terms of Batson, Mr. Polk argues that it was a violation of equal protection when the trial court overruled defense's objection to the State's peremptory challenge of an African-American juror as a violation of Batson. Your Honors are well aware of the test surrounding Batson, the three-part test. First, that the defendant has to make a prima facie showing of racial discrimination here, and that test, that stage is really not an issue in this case. A peremptory was exercised on the basis of race. Mr. Polk and Ms. Brayden Wade, the juror in question here, are both African-American. After that, the second step is that the district attorney in the case must give a race-neutral explanation for that strike, and that leads you to the third step that must be taken by the trial court in determining whether or not a Batson violation occurred, is that the court has to determine whether the reasons were pretextual for the purposeful discrimination in the case. In terms of this issue before the court, there is a couple different issues at play here with Batson. The first dealing with the trial court. At the trial court level here, what we have is a trial court that didn't engage in Step 3. They went into Step 2. They determined that there was a race-neutral reason to kick the African-American juror, the woman, off the court, and there was no evaluation of what the pretext was. And if you take a look at what the trial court judge said, it makes it clear that there was no Step 3 that the trial court judge took. What he says is, first he starts, I don't see any pattern here. I don't see any pattern. This is certainly a nonracial reason, a little bit inartful in terms of his language, being that this woman's son is in prison for murder. Maybe sympathy involved in the case, so I think it's a legitimate reason. I don't see any pattern, nonracial pattern, nonracial reason. So I'm going to deny your Batson objection. All the judge you have talking about here before and after the one comment that it's a nonracial reason is pattern. You don't have any weighing or determination, a pretext. Therefore, what you have here is a Step 2. There was no third step in getting to Batson. Well, yeah, but no. I have to say I've looked at this, and now that I've spent a fair amount of time reading transcripts, almost never does an articulation orally taken down in a transcript fit the language that's used in written opinions. You have to try to figure out what he's saying here. And I read this to say, you know, I don't see this as being racial. I see this as being something else, in effect saying it's not a pretext. I think the nonracial reason offered by the prosecutor is legitimate, so I'm going to deny your objection. He doesn't use the language that the Court uses in describing the third step, but it sure does sound like the third step to me. And I would disagree with you there. And the reason that I would disagree is that if you go with that, and if you go with that analysis, then this case is, and that's what makes Batson so difficult, then this case is just like every other Batson case, and there's no Step 3. Step 2 is there, and you're okay. Counsel, you have a very difficult fact pattern here. Here's a woman whose son was convicted of murder and is in jail, and the judge and the prosecutor think that it's unlikely that she can appropriately serve on this jury. It's not a racial reason at all. I understand. However, what I would point, what I would point to is looking at exactly what she says in terms of that, because the trial court, and here's another important distinction in the analysis, because obviously, Your Honors are well aware that we need to look at the Nevada Supreme Court opinion in the analysis of Batson, and the emotional experience for her because of her son. The problem is when you look at the questioning that occurred between the court and between that juror, she very, very specifically says that she's, and I refer the Court to Volume 1, EOR Site 168. It's where the colloquy begins between the court and the juror. You have, again, I don't want to pry into your personal affairs, but the fact that your son had that problem and this is a murder case, would you feel a little uncomfortable sitting in this case? You'd be thinking about your son. No. Yes, I do. But not thinking about my son so much, as I've been on a murder case before about 20 years ago, and that was an emotional experience I don't like. I mean, with the fact that you had this other murder jury and the fact that your son's in prison, is that going to affect your deliberation a little in this case? No. Do you think that you could be a fair juror? I read that, and I can see that we're not talking about a father-knows-best kind of family. I mean, she doesn't seem to really care very much that her son's in for murder. And when asked what the offense was, well, gee, I think, you know, it was murder. You know? Like, golly, I've got to think hard about this. What did he go up for this time? Anyway. And it's true. She relates back to when she served as a juror 20 years before. But I've got to say, if I'm sitting there as a prosecutor, I'm wondering, what's this woman going to do in a room? She's got a son that's in for murder. She said she didn't like serving as a juror on a murder case. This has got every sign of somebody who's going to give me trouble because she doesn't want to be there. She's going to think about her son. The fact that she does have a relative so close, a son, even though she's not really putting her arms around him a whole lot, but it's a close relationship on some level. And it's exactly the same charge of murder. Doesn't that make that decision a very easy one to understand? And as a result, you look at what the judge says and make it easy for him to say, well, that's not racial. She does happen to be black. But it looks to me like it's a lot more than that that would cause the prosecutor to say, I don't want her around. Also, a peremptory can be for a bad reason just as long as it's not racial. And just the fact here that she was black, I think, doesn't seem to enter into anybody's thinking. It's the facts about the son having gone to jail for murder. It could be a bad reason. Maybe she could serve perfectly well and honor plate. But that's not the issue. The issue is, did they take her off for a racial reason? And my answer to that would be yes. When you go into what the third step needs to be in a Batson challenge and what didn't happen here, and you have a contradiction in terms of the trial court. The trial court focuses on the woman's son being in prison for murder. And the trial court, as Your Honors are well aware, is in the best position to look at what they believe to be the most important issue here. The Nevada Supreme Court, when they look at it, focused on the fact that she didn't want to be on a murder trial. And there's clear case law that says that you can't focus on a new reason. And Lewis v. Lewis, this Court, stated that, that in terms of looking at step three and what happened in step three, you can't focus on a new reason that the trial court didn't focus on. And so in terms of you can't focus on a new reason, the prosecutor, you can't invent new reasons for the prosecution to explain. Right. Both of these are on the table. Correct. It's not like we're reaching out and the State's trying to argue for something that wasn't cited at the time. These are both on the table. And frankly, I put them together. I mean, I'm sitting there. If I'm the prosecutor, I say, gee, she doesn't like the experience of being a juror in a murder case. She's got a son who's in for murder. I don't care what color she is. That's not an ideal juror for my case. I understand. And that's – isn't that the step three question? Isn't that the third prong? Is the reason given good or bad? Is it pretextual? And I just don't see that being offered up as an excuse for getting rid of this black  And that's what I – and again, I'm not trying to personalize this. I'm saying, I'm going to be clear to you. The case is as it is, but – so I look at what the trial judge is saying. He shouldn't be saying, I don't see a pattern here, because there's not a requirement for pattern. But I – he goes on to say, it's not a – it's not a racial reason. And that's the question he is supposed to answer. That is the question that he's supposed to ask, but he needs to look beyond, I don't see a pattern and that's the end of it. And that's the whole point of Batson, is that you can't just say, there's not a pattern. Let's go on. Batson denied. But then when we get to the district court, we'd have to determine that the Nevada Supreme Court's determination was an objectively unreasonable application of Batson. How do you get to objectively unreasonable based on this ambiguous information? I think you get to – I believe that you get to objectively unreasonable if you compare the jury that actually sat on the case and do a comparative analysis, which has been done in numerous cases before this Court, in terms of analyzing what exactly happened when we have an inartful situation of a trial judge's reason for Batson. Let's look at – do what the trial court judge is supposed to do. The trial court judge is supposed to do. And the district court, the Federal district court in this case, talks about the Mitlider case and that that's the case that controls here. I would distinguish that in that in Mitlider, what the trial judge did there is what this judge should have done. The trial judge there took a recess, thought about it, looked about the other juror – looked at the other jurors that were sitting in the box and decided that there were – the reason was not pretextual in that case. Here, you had a bunch of other jurors, and you had five jurors in this case that had similar situations of family members. But they had ex-husbands. I mean, there was no one who had a child. It was an ex-husband, which I think in the transcript she was saying, good, great  I don't deserve that time. Get out of here. The defense actually did a preempt against her. The defense got her out. There was no child, but there were a lot of very close family members. And, again, I think that was – What was the closest? The closest that you had was – you had one juror that had a brother-in-law that was in prison for sexual assault. You had another cousin in jail for a drug offense. You had cousins, brothers-in-law, but not even – Son for murder is kind of special. No, I understand that. But when you're looking at the overall composition of that jury, I don't think that it's insignificant, and I think that that third step didn't happen there when you are looking at five jurors that had family members that – I think we had your argument here. Okay. I know the time is going, and you wanted to address another issue. I agree. Maybe it's a good time to get to the other issue. Thank you. I would also point out that the prosecutors, they stood put after they made four strikes. They left five jurors on. They didn't even come close to using all of their peremptories, and I look at that as another fact in terms of determining the pretext. The second issue in terms of prosecutorial misconduct, the prosecutorial misconduct here was that the prosecutor, in requiring Mr. Polk to testify on cross witnesses, were liars, violated due process and a fair trial in his case. The standard in terms of prosecutorial misconduct rises to the level of a constitutional violation, as Your Honors are well aware, when it so infects the trial that it makes the conviction a denial of due process. Prosecutorial misconduct, which compels the defendant to state that the State's cases that are precisely on point in terms of that. The main reason being that there are plenty of habeas cases that are talking about prosecutorial misconduct in terms of whether or not a defendant is forced to say that State witnesses are lying. Is it proper? No, there's not. But in terms of the clearly established Federal law here, the clearly established Federal law here is Donnelly, Darden, and Brecht. You go back to that in terms of what your prosecutorial misconduct is. And what you need to determine here is, in light of the record as a whole under Brecht, whether the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. Your Honors are well aware of the transcript. The transcript goes on for pages and pages and pages where the prosecution is saying, so that person's a lawyer, liar. So Little Rock is a liar. So Maurice is a liar when he gets up on the stand. So Jonette Peach is a liar when she gets on the stand. And Leslie's lying, too. And James Collins, he must be lying, too. Y.T.'s mom, the victim's mother, he must have been lying. The snitch, Kevin Pennington, he must have been lying. Deshaun Felton, he must have been lying. You get to a point in this cross-examination where the district attorney says to him, says to the defendant in this case, so who's telling the truth in these proceedings? I mean, it just becomes, it becomes absurd. And when you look at the substantial injurious effect on the jury, you have to look at what all of those witnesses testified to. And all of those witnesses presented evidence in this case of placing the defendant with a weapon two months prior. They gave reasons of seeing fights before, a couple of fights beforehand where there may have been a dispute between these two individuals. They gave evidence of what would be a possible motive. The case was identity in terms of it being a drive-by shooting. They gave evidence of what he was allegedly wearing, despite the fact that he said that he received this flannel shirt for Christmas. And the offense had happened two weeks prior to, well, 10 days prior to Christmas. And a snitch. You have a snitch that says that he allegedly confessed in a holding cell. When you look at the effect of all those witnesses on the case, if you take all those out in terms of Mr. Polk being forced to say, yes, is he lying, is he lying, is he lying, is he lying, there is no way that that can't have a substantial or injurious effect on the jury. And it's just completely improper in this case. I'd like to shift you to a different issue and comment on one specific thing. And the different issue has to do with the instructions given with regard to the requirements for premeditation that the jury find premeditation, deliberateness, and what's willing the other one, the three categories. And you made the argument that the Nevada Supreme Court has itself changed the instruction or subsequently changed the instruction. It seems to me the issues here have to do with premeditation and deliberate. Your argument is that the jury wasn't asked or required to find deliberate because it was given a definition of premeditation that led into the finding of all three. On the facts of this case, is there a gulf or a gap of any real kind between the two? Could it be rational for a jury to conclude based on these facts that the act was premeditated as defined in the instruction they were given? But might not have found that it was deliberate under the instruction that your client sought to have the jury instructed on the definition of deliberate? I think that, yes, it would have made a difference here. Again, Mr. Polk has asserted from the beginning and continues to assert that he was not the shooter in this case, that he dropped Mr. Hodges off and that that didn't  happen. But when you get to premeditation and deliberation in this case and what the old instruction had was that there was not enough emphasis on what deliberation meant, I believe that there are facts here in terms of arguable facts here in terms of the spontaneity of the event versus whether or not there was actual premeditation in what occurred. The State tried to argue that the fact that Mr. Hodges – Mr. Polk supposedly had a bulletproof vest on, that that was clear evidence of premeditation. It just doesn't make sense because there's – even if you thought – But the jury found premeditation. What I'm trying to find out is there a gap. As I look at the facts of this case, I'm not sure you could argue that they shouldn't have found premeditation, that the evidence wasn't enough. But they did. And the issue becomes, could they have found premeditation as it was defined in the instruction and still not have found that the act was deliberate if they'd been instructed separately on the definition of deliberate? I believe that – Because I think if the answer to that question is no, then that whole issue drops out. And so I'm really approaching that issue from the prejudice side. In terms of the prejudice side, I do believe that the way that deliberate was defined then and now makes it easier in cases such as this to distinguish and really force the jury to parcel out and realize that every single one of those elements has to be met before you reach first degree. The Nevada Supreme Court said that the instruction, this is in the Byford case, actually made deliberate a synonym of premeditation, so that not having an instruction on deliberate would have been okay, but the instruction that was given eliminated any separate definition of deliberate. And the distinction, I think, is that premeditation, especially under a Nevada instruction, can be – the way that it's defined is can be instantaneous as successive thoughts of the mind. Deliberate suggests something further than that. Deliberate suggests planning. But the argument here, the evidence cited here isn't, as I understood it, isn't kind of instantaneous. It's the bulletproof vest. It's something that suggests thinking not just a few seconds, but in fact minutes and possibly hours before the event. But why doesn't the bulletproof vest go, as the government says, to the dispassionate weighing process and consideration of consequences before acting, which is what the Nevada Supreme Court has told us deliberate is? Why doesn't that show that? Because there was a number of witnesses that testified during the trial that said – well, number one, there was witnesses that testified that Mr. Hodges never carried a gun. And so the reason if supposedly Mr. Polk was going to go ahead and kill Mr. Hodges, who he'd been with all evening and who he picked up the bulletproof vest with, it's just nonsensical to think that he got the bulletproof vest when the person that he supposedly was going to shoot never was armed. Why would you need that? It just – to me, I don't see any evidence of deliberation in terms of that bulletproof vest under the facts of this case. They were together when the bulletproof vest was picked up. There were a number of witnesses that said that. And there are a number of witnesses that said that he did not own a gun. Why would you need it? The Supreme Court of Nevada said we aren't going to apply the new rule to this case and that it's not constitutional and we don't have to and we're not going to. So this is a state law determination. Can we overturn that? Well, I believe that we would ask you to consider that and that the clearly established federal law in the case goes all the way back to Henry Winship in terms of the due process requires that the prosecution prove every element beyond a reasonable doubt. This obviously includes the three key elements of murder one, Gibson v. Ortiz, a jury instruction that reduces the level of proof necessary for the prosecution. And I believe that there is clearly established federal law that would allow you to find this contrary to. And I see that I've used my time. We've exhausted your time. The time is sought to reserve for rebuttal, but we'll still give you a minute to comment    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. May it please the Court and counsel, my name is Robert Wieland. I'm a senior deputy attorney general employed by the office of the attorney general of the state of Nevada and I have the privilege of representing the Respondents Appellees in this particular matter. Counsel was arguing about the Batson aspect of the issues before this court and I noted in counsel's brief that counsel was arguing that the state did not strike Mr. Corcoran who was in fact struck by the defendant and that shows the state's, the fact that the Batson challenge was protectoral. I dispute that for the following reasons. The facts belie the record, or belie the argument. In the first place, the state's first preemptory challenge was Mr. Ricciardi. The defendant struck Mr. Nichols. The second preemptory challenge offered by the state was against Ms. Batson. As Brandon Ware, the defendant's second preemptory challenge was against Mr. Corcoran. The state did not have the opportunity to strike Mr. Corcoran and I think it's inappropriate for counsel to suggest that we should draw a negative inference against the state because essentially they did the state's job for them. They exercised their preemptory challenge on Mr. Corcoran. Mr. Corcoran wasn't very popular, I guess. Nobody wanted him. So that argument fails with respect to their contention that you have to do the examination, the third step. I would also note that the state struck Mr. Stockman, whose brother was arrested for shoplifting, and the state struck Ms. Sobey who was, or excuse me, young Mr. Sobey who was arrested for drugs. The Petitioner makes, tries to contend that Mr. Lawson, the defendant's brother, should have been stricken too by the state because he chose to marry a woman who had some ne'er-do-wells for brothers. But the difference, as has already been observed, is the closeness in the familial relationship between the, between Ms. Baden Ware and the other people. This is the circumstances, as was noticed, that she's a lady whose son is in prison for murder, the selfsame crime with which the prosecutor is charging the defendant. I would suggest that had the prosecutors who leave parents who have children on their juries who are in prison quickly become former prosecutors. The point being is, is that in this particular case, obviously there is a very close familial relationship between a direct. I'm not sure how obviously close it was, but there is a familial relationship. There's no way around that. Warm and tender. The relationship of one of mother and son is quite simply, or mother and child, is an incredibly close relationship, no matter how strained it might appear to be. Well, what do you make of the words actually used by the trial court, making reference a couple different times to a lack of a pattern? Well, I think those should be. It's not a requirement for a pattern, is there? No. But a pattern can be evidence of racial discrimination under Batson. I think the judge may have been inarticulate. He maybe could have said it more clearly, but I think he said it clearly enough, and the evidence that is in the record in this particular case shows very clearly that there wasn't any racial determination. The judge made that express finding. Counsel's brief also tries to make a point arguing that Juror Green's brother, who was convicted of a drug offense, may argue that he presumably spent time in jail. There is absolutely no evidence of that in the record, and indeed, Juror Green stated, for a fact, I know that he did not serve time. Mr. Wright had a cousin in jail for drugs. Those are the jurors that the or the points that the Petitioner makes in his brief suggesting that the peremptory challenge was exercised in a racially discriminatory manner. Those points, as I've shown, are negated. They simply do not have the weight the counsel would like to have them, and the comparative analysis fails. The Federal District Court pointed out the Mitlider case. It covers the point exactly. In the Mitlider case, although the judge did apparently take a break to make a determination or something, even if you were to do a comparative analysis in this particular case, it affords no solace for the Petitioner. Going to the instructions. Just so I know, we've got an additional citation that's come from you. Is that correct? Yes, it does, Your Honor. What issue does this relate to? What that has to do with is the judge's finding of the credibility of the prosecutor. What it does is it says that the judge is in the best position, the trial judge is in the best position, to make the determination of the credibility of the prosecutor. And I submit in this particular case the judge, by virtue of his comments, found the prosecutor's assertions to be credible. That dovetails into Rice v. Collins, where that the circumstances is that unless, as Justice Kennedy said, unless the court can find the trial court's determination to be unreasonable, can't get, he can't get relief on the Batson challenge. Turning to the jury instructions. What happened in this particular case, the trial court used the Kaslan jury instruction, which was approved by the Nevada Supreme Court. As Your Honor pointed out, it is an issue of State law, be that as it may. Even if, even if the court were to decide that there was instructional error in this particular case, the evidence presented by the prosecutor to the jury shows overwhelming evidence of premeditation and deliberation. Could you go into the evidence of deliberateness? I know that the court said it was overwhelming evidence, but I didn't see that in the  Okay. Other than the vest seemed to be the only item. I beg your pardon, Your Honor. The bulletproof vest. Okay. There had been at least two previous instances where the victim and the defendant had had fights and altercations. At one of those, the fight got so severe that when, I believe it was Danette Peach heard about it, and as a matter of fact, this was just prior to the homicide, she told the victim to watch out for Mr. Polk. The defendant himself on a previous occasion had said, I'll shoot him. I won't fight him. He won't let him, I won't even let him get near me. There was the situation where the defendant was driving his girlfriend, Leslie Harris. They had seen the victim at the bus stop, I believe it to be the same bus stop where he was shot. The defendant decided to drive by rather than to pick the victim up. This is a previous occasion. What we have in this circumstance, too, in addition to the bulletproof vest, is the fact that the defendant had a firearm. He had it concealed somewhere. Yes, everybody knew that he or, excuse me, at least Danette Peach knew that he had a firearm and Leslie Harris knew that he had a firearm. They had asked him, one or the other of them, had asked him to get rid of it. And he had taken it out to the car supposedly to have disposed of it, but it's apparent that he didn't. The point is, is that at some point in time on that night, December 14th, 1998, and we know this, that there was an altercation. There's testimony that the defendant and the victim are arguing about something. On that night? Because they're driving together. I guess there's some evidence that they were driving together. Yes. They had been, they were driving together. They went to a location. They smoked some blunt marijuana with PCP or whatever. There was indication as well that the defendant was mad at the victim because he had I guess I'm still having trouble seeing where this overwhelming evidence is. I mean, the Nevada Supreme Court says dispassionate weighing process and consideration of consequences before acting. And what you're telling me and what was in the record was they'd had some fights, they'd had arguments. He made threats. Was this overwhelming evidence that at this particular incident where there were no witnesses or any testimony about what happened at the incident, that that was a result of deliberation? I'm developing the scene because the evidence shows that on a prior occasion earlier, he said he was going to shoot this guy, the victim. It shows that he had a reason for doing it. It shows as well that he did not dispose of the gun. The gun was a .38 special with 110 grain semi-jacketed hollow points. That's not a target pistol. That was the weapon that was apparently used in the homicide. That was determined because the two slugs they removed from the chest of the decedent, the victim, matched the bullets that were in Donette Peach's apartment. That matched the fingerprints that had fingerprints on them that belonged to Mr. Polk to show that he had the bullets. The bullets themselves were of the same manufacturer type and such as the bullets that Donette Peach had. And that goes to guilt, I understand. Beg your pardon?  Yes, it does. That goes to guilt. It also, the fact that he used such a firearm, in addition, tends to show premeditation and deliberation. The point being is that on that particular night, there's testimony about how they had had a fight, how the defendant hugged, or excuse me, how the victim hugged the defendant, apparently to make up, and the defendant did not respond. From this whole inference, this whole chain of events culminating in the homicide, the manner in which it was achieved, getting somebody in the car, letting him get out at the bus stop, shooting from the car. I can go through what it takes to fire a pistol. He had to have it with him. He had to have put it there beforehand. He had to have gotten it out. It had to have been loaded. He had to have pulled it, and he had to have aimed it at him. We know he fired at least four shots. Two of them struck the victim in the chest. One grazed him in the back, apparently. But they found two slugs that had gone past the victim in this case in the wallet, checker, auto parts, or whatever it was. So we know that the defendant fired not just two shots, he fired four shots. That tends to show, the whole preparation and plan of this thing tends to show premeditation and deliberation. It was a setup. He ambushed him. He got him in the car. They were going to go somewhere. He let him out at the bus stop, and as Mr. Pennington said, he capped him in the ass. Did you try the case? No, I did not, Your Honor. You want to talk about what may not turn this case, but the conduct of the prosecutor was not exactly professional in this case when he kept trying to push the defendant into saying, well, that one lied and that one lied. In the State's brief, answering brief on direct appeal, the State appellate attorney pointed out that there was at least a split of authority. There were two jurisdictions, two State courts, as I recall, that accepted the idea or that condoned the idea of having a defendant make comments about, well, isn't this guy lying? You heard his testimony. Isn't this person lying? And that's what happened here. Is this a policy in your office? It's not my office. As I said, I didn't try the case. I tried a whole bunch of cases, about 100 felony jury trials myself. It's not my customary practice. The point being, Your Honor, is, is that in the first instance. Well, I was thinking about the office as a whole, the prosecutor's office. Your Honor, this is an entirely separate prosecutor's office. I work for the Office of the Attorney General of the State of Nevada. This was the Washington, excuse me, the Clark County District Attorney's Office. Okay. Well, do you know what their policy is? No, I do not. Okay. I would expect that they probably don't do this very much. Regardless of whether or not it constitutes prosecutorial misconduct, I'm not conceding that it is, but even if it were misconduct, it did not have a substantial and injurious effect on the jury's verdict in this case, given the evidence. That's the Nevada Supreme Court noted that there was not an objection by defense counsel, and the error, if there was one, even assuming that it was error, did not amount to plain error. The result under AEDPA is, is because the Nevada Supreme Court's holding was not contrary to or an unreasonable application of clearly established Federal law, as explicated by the United States Supreme Court, habeas relief should be denied. Unless you have any other questions, I would respectfully ask the Court to affirm the judgment of the Federal District Court and deny habeas relief on all certified issues. Thank you for the argument. Thank you, Your Honor. Rebuttal. A couple of things briefly, Your Honor. Prior to my current position, I did try cases in the Clark County, the Eighth Judicial District Court, and unfortunately, this is the type of thing that does occur more than it should happen. In my opinion, once is more than it should happen, especially in a case here where you have the prosecutor over and over and over and over again stating, did this person lie, did this person lie, did this person lie, did this person lie. I don't see how that can be anything but or a substantial and injurious effect or influence in determining the jury's verdict. I would note in terms of how things kind of happen in the Eighth Judicial District too, it is a little bit telling when you look at this cross-examination of the defendant who's on trial for his life here in terms of what's happening, and the prosecutor is saying, is this person lying, is this person lying, is this person lying. Defense counsel says, objection, Your Honor. The court says, I can't keep up with this. I was trying to do some work. I've got to really listen and pay attention now, all right? In terms of deliberateness. Well, we gave you a minute and you've used it, so you have 30 seconds. 30 seconds on deliberateness. Thank you. I appreciate it. I would note that in terms of I would agree with what I believe that, Judge Okuda, your position is in terms of deliberateness. It's not quite so overwhelming as the Nevada Supreme Court and the State is asserting. We have a situation where these two men lived in a very tough neighborhood, the north side of Las Vegas. They grew up. They were cousins. They got into disagreements. They grew up together. It's a tough neighborhood. They dated quite a few of the same women and had disagreements at times over those relationships that were occurring and not happening. I would say that overwhelming evidence is not the fact that he was driving around with a girlfriend and didn't pick up his friend on one occasion. I don't know how you're showing that that's deliberate in terms of him intending to kill him. In addition, you have a firearm two months prior. The State is trying to say that because you have a gun, that must mean that you're going to go out and kill someone with it. I would submit that that's not the case. The evidence that they were fighting that night, what you have is a situation where Mr. Hodges tried to hug him. He didn't want to hug him. Again, deliberateness to kill him, I disagree with that. I would submit it. Thank you. We thank you and thank both counsel for the argument. The case just argued is submitted.
judges: B. Fletcher, Clifton, Ikuta